IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM D. SROUFE, Ed.D.,

     Plaintiff,

v.                          Civil Action No. 3:23cv548

SCRIPS MEDIA, INC.,
t/a WTVR and/or CBS6,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO DISMISS (ECF No. 10) filed by the defendant Scripps Media, Inc. ("Scripps," "WTVR," or the "Defendant"), and the supporting, opposing and reply memoranda (ECF Nos. 11, 15 and 16).  For the reasons set forth below, the MOTION TO DISMISS (ECF No. 10) will be denied.

## BACKGROUND

William D. Sroufe, the holder of a doctoral degree in education and formerly the Superintendent of the Colonial Heights Public Schools ("CHPS") filed this action alleging a claim of defamation against "Scripps t/a WTVR and/or CBS6." The facts, as expressed in the COMPLAINT (ECF No. 1), are relatively straightforward.  In particular, on February 17, 2023, WTVR aired a news story about Sroufe's exit as the Superintendent of CHPS. The Complaint asserts that the story was materially false because

it reported that Sroufe was "ousted" when, in fact, he was not and because: (1) it falsely implied that Sroufe had covered up complaints about improper conduct on the part of the softball coach at Colonial Heights High School which allowed the coach to escape criminal prosecution; and (2) the story falsely suggested that Sroufe was fired for covering up those complaints.

It is also alleged that WTVR, through its reporter, Melissa Hipolit, knew that the allegedly false statements were false and knew in fact that Sroufe had not been "ousted" but had voluntarily resigned from his position.  Moreover, according to the COMPLAINT, Hipolit knew that: (1) the sole source of the false narrative which Hipolit had so enthusiastically propagated, in fact, had told Hipolit a material falsehood about the story; and (2) the School Board's attorney actually had not only denied any cover up, but also had provided Hipolit with evidence that negated the claims asserted by Hipolit's impeached source (ECF No. 1, ¶ 2).[1]

According to the COMPLAINT, Hipolit bills herself as an investigative reporter who is "always on the lookout for a **great story**" (ECF No. 1, ¶ 26) and Hipolit publishes her stories under

---

[1] The COMPLAINT alleges that, although a number of news outlets covered Sroufe's parting company with the School Board, only WTVR made false claims that he had covered up the misconduct allegations against the high school's softball coach and only WTVR quoted the person as saying that Sroufe was responsible for the softball coach scandal and needed to be accountable.  (ECF No. 1, ¶ 3).

WTVR's "Problem Solvers Investigation" banner.   In sum, the COMPLAINT casts Hipolit as a sensationalist who cared not at all that her source had been impeached and who disregarded evidence that refuted the narrative she wanted to pursue.

Taken as a whole, the COMPLAINT thus alleges that Hipolit not only defamed Sroufe but did so knowingly and that she embellished the defamatory words with verbal and written comments laden with emotion, underscoring and symbols, all of which was calculated to exaggerate the significance of the story that Hipolit was touting without regard to whether what was being said was true or not.   It is also alleged that, as part of her wrongful, defamatory conduct, Hipolit doctored video material by making an answer given by Sroufe to one question appear to be his response to an entirely different question.

A review of the textual material and the recorded presentations given by Hipolit that are identified in the COMPLAINT teaches that a finder of the fact reasonably could conclude that the reporting about Sroufe was laced with text, tone, and innuendo that presented a knowingly false picture of Sroufe's departure from his job as Superintendent of schools in Colonial Heights. The allegations of the COMPLAINT, if proved, also would permit a reasonable inference that Hipolit knew that the key source for her stories blaming Sroufe for a cover up and saying that he had been

ousted from his job were just not true.  In other words, if the factual allegations made in the COMPLAINT are proved, a reasonable jury could certainly find in Sroufe's favor.

Finally, the COMPLAINT alleges that the defamatory statements substantially harmed Sroufe (ECF No. 1, p. 32).  In particular, those statements resulted in a withdrawn job offer, foreclosed other job offers, destroyed his previously favorable reputation, and caused continuing reputational and emotional harm.

In support of its MOTION TO DISMISS, the Defendant makes several arguments.  First, it contends that the word "ousted" as used in the reports is not defamatory as a matter of law.  Second, it argues that use of the word "ousted" is the expression of an opinion and thus, as a matter of law, it is not actionable.  Third, the Defendant argues that the challenged statements were true, or substantially true, and thus not actionable as a matter of law. Finally, the Defendant argues that actual malice has not been adequately pled. Each of those arguments will be considered in turn.

## DISCUSSION

The parties are in agreement respecting the applicable law. They therefore agree that to prevail on a defamation claim in Virginia, a plaintiff is obligated to prove "a publication of false information concerning the plaintiff that tends to defame the

4

plaintiff's reputation." <u>Hatfill v. New York Times Co.</u>, 416 F.3d 320, 330 (4th Cir. 2005).   That concept devolves into three elements:   "(1) publication of (2) an actionable statement with (3) the requisite intent." <u>Chapin v. Knight-Ridder, Inc.</u>, 993 F.2d 1087, 1095 (4th Cir. 1993).   They also agree that for a statement to be actionable it must be both false and defamatory; that the statement must tend "so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." <u>Chapin</u>, 993 F.2d at 1092.   Finally, they agree that Sroufe must establish actual malice because he is a public figure. <u>See</u> <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279-80 (1964).

These principles guide the assessment of the arguments on which the Defendant bases its request for dismissal.

## 1.   The Word "Oust" Can Be Defamatory

The February 17, 2023 story trumpeted in bold letters that the "School board votes to oust Colonial Heights superintendent during emergency meeting."   (ECF No. 1, ¶ 100 and Exhibit C). Hipolit embellished that declaration by adding:   "Breaking: Colonial Heights School Board unanimously votes to oust Superintendent Dr. William Sroufe."   The Defendant takes the view that the word "oust" is not susceptible of defaming anyone.

5

That view ignores the fundamental precept that, when assessing whether a word is susceptible to defamatory meaning, it is given its ordinary and usual definition.  As the Supreme Court of Virgina long ago put that controlling principle:

> [I]t is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used.

Carwile v. Richmond Newspapers, Inc., 82 S.E.2d 588, 591-92 (Va. 1954).

As a transitive verb, oust means "to remove from or dispossess of property or position by legal action, by force, by the compulsion of necessity." Oust, merriam-webster.com, https://www.merriam-webster.com/dictionary/oust.  The same source lists as synonyms for the word oust the following:

| | |
|---|---|
| banish | boot (out) |
| bounce | cast out |
| chase | dismiss |
| drum (out) | eject |
| expel | extrude |
| kick out | out |
| rout | run off |
| throw out | |
| turn out | |

Another source (dictionary.com) defines the verb "oust" to mean "to expel or remove from a place or position occupied or to eject or evict or dispossess." Oust, dictionary.com,

https://www.dictionary.com/browse/oust.    Thesaurus.com lists as synonyms for the word "oust" the words: "depose, dethrone, dislodge, drive out, eject, evict, fire, force out, let go, lose, remove, sack, topple, unseat." Ost, thesaurus.com, https://www.thesaurus.com/browse/oust.

Quite clearly, the plain meaning of the word "oust" is negative and connotes an event that is other than voluntary. And, when "oust" is linked with a reported termination of employment, well-established Virginia law permits a reasonable jury to find that the statement reasonably would be understood to be a report that the termination of Sroufe's employment was involuntary, forcible, and against his will. Indeed, considering the context of its use in this case, it might be difficult for a jury to reach any other conclusion.

The Defendant argues otherwise by citing decisions that say that stating or implying "that someone has been terminated from employment or terminated for cause, without more, is not defamatory."[2] Those decisions simply do not apply here because the COMPLAINT alleges considerably more than just a termination for cause. Thus, the limiting principle ("without more") of the

---

[2] Yoho v. Bank of N.Y. Mellon Corp., No. 21-1071, 2022 WL 296637, at *3 (3d Cir. Feb. 1, 2022); see also Estepp v. Johnson Cnty. Newspapers, Inc., 578 S.W.3d 740 (Ky. Ct. App. 2019); Picard v. Brennan, 307 A.2d 833, 834 (Me. 1973).

decisions on which the Defendant relies is not operative in assessing the legal sufficiency of the COMPLAINT in this case. In particular, the COMPLAINT clearly alleges that the Defendant made it clear that Sroufe's separation from his employment was involuntary because he had engaged in misconduct (covering up the very wrongful conduct of the softball coach) when, in fact, Sroufe left his employment voluntarily and was not engaged in the alleged cover up. In other words, giving "oust" its plain and natural meaning, and reading it in the sense in which it was used, the word "oust" reasonably could be found to be both false and defamatory. The Defendant's argument to the contrary fails because it does not recognize the plain and natural meaning of the word "oust" in the sense it was used and in the context it was used. Therefore, the argument simply does not pass muster under Virginia law.

**2. Oust as Opinion**

The Defendant next contends that calling Sroufe's firing as being ousted is the expression of an opinion and therefore not actionable as a matter of law. In support of that argument, the Defendant takes the view that use of the term "ousted" "is both relative in nature and based on fully disclosed facts regarding the abrupt and unexpected termination of Sroufe's employment a

year before his contract expired."  From the allegations of the COMPLAINT, that argument quite clearly lacks merit.

Oust certainly is not a relative word.  To the contrary, it is absolute and factual in its nature and in its common usage. The relativity argument proceeds from the notion that the report of Sroufe's departure (as having been ousted) could have been construed by a reader as voluntary.  That view ignores the pleaded facts that Sroufe was neither forced to resign nor to sign a Separation Agreement and that both decisions were made of Sroufe's own free will and his choice and without compulsion.  Those allegations must be taken as true.  The Defendant's relativity argument is the naked argument of counsel supported by neither cited law nor a reasonable reading of the COMPLAINT.  And, as explained above, the relativity argument ignores the plain meaning of the word "oust" and the sense in which it was used.

The doctrine of "fully disclosed facts" operates to insulate an alleged defamatory statement.  That argument is likewise lacking in merit.  The alleged false implication (that Sroufe was ousted or fired because he was involved in covering up allegations of misconduct against the coach) is not protected by the fully disclosed facts doctrine because the disclosed facts are themselves defamatory and false according to the allegations of the COMPLAINT. Enigma Software Grp. USA, LLC v. Bleeping Computer

LLC, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016); Jewell v. NYP
Holdings, Inc., 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998).  Of equal
importance here is that the facts were not fully disclosed because,
according to the COMPLAINT, the Separation Agreement was never
made known to the reader with the contested version of the reported
story.  Nor was the Separation Agreement ever displayed on the
screen during the telling of the story.  As a result, those who
watched the sensational story that aired on February 17, 2023 would
not have had access to the facts respecting the Separation
Agreement and what it said pertaining to Sroufe's departure.

Thus, the false and missing information (if proved to be false
and missing) preclude application of the fully disclosed facts
doctrine.

3.   **The Argument That The Stories Are Not "Of And Concerning"**
     **Sroufe**

For reasons neither explained nor readily apparent, the
Defendant asserts that the alleged defamatory statements are not
of and concerning Sroufe. That simply does not withstand scrutiny.
One cannot read the February 17 report, or the related reporting
in December, and fail to conclude that the reporter is saying that
Sroufe covered up the charges against the softball coach and was
fired because of it.  By any measure, that is of and concerning
Sroufe.  Considering the allegations of the COMPLAINT and giving

10

them their reasonable inferences, and considering the alleged
defamatory statements and the context in which they were made, a
reasonable jury could find that the Defendant's defamatory
reliance on those statements were of and about Sroufe.

**4.   Actual Malice**

The COMPLAINT recognizes that it is plaintiff's obligation to
plead and prove actual malice, a subjective measure of what the
defendant actually thought.  <u>Harte-Hanks Communications, Inc. v.
Connaughton</u>, 491 U.S. 657, 666 n.7 (1989); <u>Reuber v. Food Chem.
News, Inc.</u>, 925 F.2d 703, 715 (4th Cir. 1991).

As the Supreme Court of the United States held in <u>St. Amant
v. Thompson</u>, 390 U.S. 727, 731-32 (1968), actual malice can be
found if there is "sufficient evidence to permit the conclusion
that the Defendant in fact entertained serious doubts as to the
truth of his publication.   Publishing with such doubts shows
reckless disregard for truth or falsity and demonstrates actual
malice."  The COMPLAINT alleges that the Defendant was on notice
that the entire story was based on a highly unreliable source, one
who was known to have made materially false statements on the
topic.  It is also alleged that, with that knowledge, the Defendant
repeatedly published the statements of that source about the
alleged cover up "with the high degree of awareness of their
probable falsity." <u>Garrison v. Louisiana</u>, 379 U.S. 64, 75 (1964).

In that regard, it is alleged that, by the time of the February 17 news story, Hipolit: (a) knew that Allen had lied to her about a material issue involving the investigation of the softball coach (ECF No. 1, ¶ 74); (b) knew that Sroufe and the school system had not only denied the cover up accusations but had provided an objective factual basis for the denial, (ECF No. 1, ¶¶ 60, 79-80); and (c) possessed a Virginia State Police interview report that cast doubt on the source's claims that she had previously reported specific misconduct complaints about the coach to the school system, (ECF No. 1, ¶¶ 65-66, 74-75).  Additionally, the COMPLAINT alleges (and provides documentary support for the allegations by way of FOIA requests and third-party emails) that Hipolit had a preconceived narrative about Sroufe and his role that she intended to foster no matter what the real facts were.  (ECF No. 1, ¶ 38). Those allegations, if proven, are sufficient to establish the element of actual malice.[3]

---

[3] The Defendant asserts, as a defense to actual malice, that it published Sroufe's claims of innocence and his denials.  Although, if proven, those asserted facts could be submitted to a jury as probative of the lack of actual malice.  However, the allegation of those facts in a Motion to Dismiss is not sufficient to establish a lack of malice as a matter of law.

**CONCLUSION**

For the foregoing reasons, the MOTION TO DISMISS (ECF No. 10) filed by the defendant, Media Scripps, Inc. t/a WTVR and/or CBS6 will be denied.

It is so ORDERED.

_____ /s/   _R E P_
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: April _5_, 2024